**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| DAVID PHILLIP and CARLY PHILLIP, each individually and as Next Friends to C.P, P.P, S.P. and R.P.,<br><br>Plaintiffs,<br>v.<br><br>THE MICHAELS ORGANIZATION, LLC ; AMC EAST COMMUNITIES, LLC, ; MMS AIR FORCE LLC,<br><br>Defendants.<br>_______________________________/ | Case No. 8:26-cv-02634-SDM-AEP |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR IN THE ALTERNATIVE MOTION FOR JUDGMENT ON THE PLEADINGS**

Pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(6), 12(c), and 9(b) Defendants, MMS AIR FORCE LLC, AMC EAST COMMUNITIES, LLC, and THE MICHAELS ORGANIZATION, LLC ("TMO") (collectively "Defendants") by and through undersigned counsel, move to dismiss Plaintiffs' Complaint in its entirety based on failure to state a claim, barring and preclusion of various causes of action under the Federal Enclave Doctrine, and the Complaint is a prohibited "shotgun" pleading. Moreover, the Court cannot properly exercise either general personal jurisdiction or specific personal jurisdiction over TMO. In support thereof, Defendants state:

# MEMORANDUM OF LAW

## I. INTRODUCTION

On September 9, 2026, Plaintiffs filed their Complaint (**ECF 1**) naming David Phillip and Carly Phillip, each individually and as Next Friends to C.P, P.P, S.P. and R.P. (hereinafter collectively "Plaintiffs"). Plaintiffs assert that they were residents of the Harbor Bay housing community at MacDill Air Force Base ("MacDill AFB") located in Tampa, Florida via a residential lease for the Premises located at 8468 Fortress Dr., Tampa, FL ("Premises"). Solely Plaintiff David entered into a lease for the Premises. **ECF 1**, ¶24-25. Plaintiffs move into the Premises on or about August 2, 2021 and continued living at the premises through at least January 2026 despite the alleged uninhabitable conditions. **ECF 1**, ¶24, 36.

The Complaint alleges that the Premises were not properly maintained and/or repaired, leading to moisture and mold conditions and alleged health complications of family members during the applicable Residency. *See* **ECF 1**. Plaintiffs allege that "on or about September 10, 2022 Ms. Phillip observed visible mold around the kitchen air vents and attic access panel". **ECF 1**, ¶29. They also allege there was water leaking through the kitchen ceiling from an upstairs bathroom. **ECF 1**, ¶30. They also

complaint that damage occurred to the Premises after Hurricane Milton, like most people in the Tampa Bay Area. **ECF 1**, ¶ 35. Defendants deny the allegations. All of Plaintiffs' claims are legally deficient and should be dismissed.

## II. LEGAL STANDARD

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the Court is not required to accept as true any legal conclusions couched as factual allegations. *See* Papasan v. Allain, 478 U.S. 265, 286 (1986).

To survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (*citing* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 544 (2008)). "When, on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support a cause of action, dismissal is appropriate." Marshall County Bd. Of Educ. v. Marshall County Gas Dist., 992 F.2d 948, 954 (11th Cir. 1986). Further, "[w]hen the allegations contained in a complaint are wholly

conclusory . . . it is proper to dismiss for failure to state a claim. Davidson v. Georgia, 622 F.2d 895, 897 (11th Cir. 1980).

Rule 9(b) of the Federal Rules of Civil Procedure heightens pleading standard for cases sounding in fraud—requiring plaintiff(s) to offer more than conclusory allegations that certain statements were fraudulent. *See* U.S. ex rel. Clausen v. Lab Corp. of Am., Inc. 290 F.3d 1301, 1313 (11th Cir. 2002). Specifically, to pass muster under Rule 9(b), "the Complaint must set forth particular allegations about the 'who, what, when, where, and how' of the fraud." Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). A plaintiff alleging fraud must therefore plead: "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." In re Galactin Therapeutics, Inc. Secs. Litig., 843 F.3d 1257, 1269 (11th Cir. 2016).

"The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to

state a claim." Waller v. Hanlon, 922 F.3d 590, 599 (5th Cir. 2019). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (*quoting* Twombly, 550 U.S. at 570). The court must set aside unsupported legal conclusions and focus on well-pled facts, then judge the plausibility of those facts to decide whether the complaint shows more than "the mere possibility of misconduct." Id. at 679; Waller, 922 F.3d at 599.

## III. REQUEST FOR JUDICIAL NOTICE

When considering a 12(b)(6) motion to dismiss, while construing the allegations within the complaint the court need not accept 'facts which run counter to facts of which the court can take judicial notice."' Howard v. Gee, No. 8:04-CV-312-T-30TBM, 2009 WL 10711627, at *1 (M.D. Fla. Sept. 22, 2009); Ellen S. v. Fla. Bd. Of Bar Examiners, 859 F. Supp. 1489, 1492 (S.D. Fla. 1994). Thus judicial notice of documents is appropriate in deciding this motion.

Courts in this District have noted that under Rule 12(c), a motion for judgment on the pleadings can consider, not only the complaint, answer, and all documents attached, but also any matter appropriate for judicial notice with respect to the factual background of the case. *See* Booker v.

Doyon Sec. Srvcs., LLC, No. 15-24146, 2017 WL 5202682 (S.D. Fla. Jan. 20, 2017). In Booker, the District Court took judicial notice of the "fact that [the property] is located within a federal d." Id. (noting courts have taken judicial notice of the "boundaries of the nation, of the location of state and territories, the location of the boundaries of the state in which the court is sitting, of counties, districts and townships.").

Courts in this Circuit have routinely taken judicial notice of publicly available information and reliable sources pertaining to federal property ownership and cession to conclude whether Federal Enclave Doctrine is applicable to the claims at issue. Id.; *see also* Aponte v. Akima Glob. Servs., LLC, No. 17-24184-CIV, 2019 WL 451797, at *2 (S.D. Fla. Jan. 18, 2019); King v. Akima Global Servs. LLC, Case No. 16-25254 (S.D. Fla. July 25, 2018); Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999); Fed. R. Evid. 201(b).

As such, Defendants request judicial notice of this Court's findings on March 26, 2025, in Eid v. Michaels Mgmt. Servs., LLC as those findings relate specifically to the application of the Federal Enclave Doctrine to MacDill AFB. *See* No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *3 (M.D. Fla. Mar. 26, 2025). Defendants also request judicial notice of this Court's findings on

August 21, 2026 in Mullins, et al. v. The Michaels Organization LLC, et al. as those findings related specifically to the application of the Federal Enclave Doctrine to MacDill AFB, and to the outcome of several causes of action alleged in the Complaint as the causes of action are the same. *See* No: 8:25-cv-02637-SDM-AAS, **ECF 68** ("Mullins Order").

## IV. ARGUMENT

**a. The Federal Enclave Doctrine Bars State-Law Claims That Did Not Exist When MacDill AFB Became a Federal Enclave and Thus Counts V, VI, VII, IX, X, XII, and XIII are Precluded to the Extent they Only Seek Emotional Damages.**

i. The Federal Enclave Doctrine Bars Post-Cession State Law Causes of Action

Counts V, VI, VII, IX, X, XII, XIII, XIV, and XV of Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim because the Premises are located wholly within MacDill AFB, which is a federal enclave subject to exclusive federal jurisdiction since March 29, 1950. Therefore, all Florida laws enacted or modified after the 1950 cession date do not apply to the federal enclave and there is no Section 5001(b) exception where the Complaint only seeks emotional damages, or can only recover emotional damages.

"The federal enclave doctrine gives Congress the power to 'exercise exclusive Legislation . . . over all Places purchased by the Consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings."' King, 775 F. App'x 617 at 620 (*quoting* U.S. Const. art. I § 8, cl. 17). Notwithstanding this exclusive federal legislative authority, "when an area in a State becomes a federal enclave, 'only the [state] law if effect at the time of the transfer of jurisdiction continues in force' as surrogate federal law." Parker Drilling Mgmt. Servs., Ltd. v. Newton, 587 U.S. 601, 621 (2019) (*quoting* James Stewart & Co. v. Sadrakula, 309 U.S. 94, 100 (1940)). In the instant matter, the State of Florida validly ceded all of the land comprising MacDill AFB to the United States in 1950. *See* **Exhibit 1**; *see also* Eid, No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *2; U.S. v. Boling, No. 8:19-cr-518-T-36JSS, 2020 WL 1931328 (M.D. Fla. Apr. 2., 2020), *report and recommendation adopted*, 2020 WL 1929465 (M.D. Fla. Apr. 21, 2020) (recognizing MacDill as a federal enclave).

The three exceptions to the general rule that state law as of the date of cession applies within the federal enclave which do not apply to the instant case are: "(1) where Congress has, by statute, provided a different rule; (2) where the state explicitly retained the right to legislate over specific matters

at the time of cession; and (3) where minor regulatory changes modify laws existing at the time of cession." Allison v. Boeing Laser Tech Servs., 689 F.3d 1234, 1237 (10th Cir. 2012).

While Plaintiffs attempt to plead into the exception under 28 U.S.C. Section 5001(b), this attempt to sidestep the Federal Enclave Doctrine fails. Although the Plaintiffs will urge a broad reading of the term "injury," most courts reject that construction and limit the statutory exception to a claim for physical injury. *See, e.g.,* Colon v. U.S., 320 F. Supp. 3d 733, 746 (D. Md. 2018); *see also* Shurow v. Gino Morena Enterprises, LLC, No. 3:16-CV-02844-L-KSC, 2017 WL 1550162, at *3 (S.D. Cal. May 1, 2017) (Lorenz, J.). Shurow limits Section 5001(b) to a claim arising from physical injury.

Even apart from the meaning of "injury," the text of Section 5001(b) does not accomplish what the Plaintiffs suggest. The subsection concerns the place of injury and provides that the parties' rights are governed by "the law of the State in which the place is located." But the statute says nothing about the content of that law — that is, whether the governing state law is the law in force at the time of cession or the law enacted afterward. "References to 'applicable law" do not evince an intent to apply any specific law." Vinales v. AETC II Privatized Housing, LLC, 146 F.4th 434, 442 (5th

Cir. 2025) (holding that a choice of law provision in a contract executed in a federal enclave does not imply that the contract requires application of current state law). Therefore, even if Section 5001(b) applied here, it does not expressly provide that post-cession state laws apply to the federal enclave to the extent those causes of action only seek or only allow recovery for emotional damages.

The Plaintiffs' allegation of the Florida choice-of-law provisions in the leases is equally unavailing. As Judge Barber observed in Eid, there is no persuasive authority for the proposition that private parties — neither of which is the United States — may contractually require the application of modern state law within a federal enclave. At least one court has expressly criticized this specific argument. In Fischer v. Fort Belvoir Residential Communities, LLC the Court concluded that there is "no authority in support [for the] conclusion that choice-of-law language can effectively abrogate the federal enclave doctrine." Id., No. 1:22-cv-286, 2024 WL 666067, at *5 (E.D. Va. Feb. 16, 2024) (Alston, J.). Even if the residential lease could validly selected Florida law, this raises the same issue: whether the Florida law applicable within the federal enclave is the state law in force when Florida ceded jurisdiction to the United States in 1950 or, alternative, all of

the state laws enacted after that cession of jurisdiction. *See* Vinales, 146 F.4th at 442. Even if Section 5001(b) applied here, the statute specifies only that the parties' rights are governed by "the law of the State in which the place is located" and does not identify the content of that law — that is, whether the governing state law is the law in force at the time of cession or the law enacted afterward. Nor does the leases' Florida choice-of-law provisions alter that conclusion, because private parties cannot contractually abrogate the federal enclave doctrine or require the application of post-cession state law within a federal enclave through a contractual choice-of-law provision. *See* Eid, No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *2; *see also* Fischer, No. 122-CV-286-RDA-LRV, 2024 WL 666067. "Therefore, to the extent state law is to be applied to events occurring on MacDill, it is Florida state law as it existed in 1950." King, 775 F. App'x at 621.

Pursuant to the federal enclave doctrine, this Court lacks subject matter jurisdiction to adjudicate Florida state law causes of action that were enacted after MacDill's cession in 1950. Accordingly, Plaintiffs' Counts V, VI, VII, IX, X, XII, and XIII must be dismissed as they are precluded by the federal enclave doctrine and the Court should dismiss *all* of Plaintiffs' post-

cession state law claims with prejudice to the extent those causes of action only seek or only allow recovery for emotional damages.

ii. Counts V, VI, VII, IX, X, XII, and XIII were all enacted after 1950 and thus are not valid causes of action per the Federal Enclave Doctrine

Counts V, VI, VII, IX, X, XII, and XIII of Plaintiffs' Complaint should be dismissed for failure to state a claim the because they are Florida state law causes of action that did not exist in 1950—when the transfer of jurisdiction took place—and federal enclave doctrine controls.

A. Plaintiffs' Negligent Infliction of Emotional Distress Claim (Count V) is Barred.

Florida Law did not recognize Negligent Infliction of Emotional Distress ("NIED") as its own cause of action until at least 1985. *See* Champion v. Gray, 478 So.2d 17 (Fla. 1985). The Supreme Court of Florida rejected recovery for negligent infliction of emotional distress in 1893. *See* Int'l Ocean Tel. Co. v. Saunders, 32 Fla. 434, 14 So. 148, 152 (1893). The Supreme Court of Florida upheld Saunders in 1941 and 1950. *See* Dunahoo v. Bess, 146 Fla. 182, 200 So. 541 (1941); Kirksey v. Jernigan, 45 So. 2d 188 (Fla. 1950). Thus, Plaintiffs' claim for NIED is barred as it only allows recovery for emotional damages, and thus should be dismissed with prejudice. *See* Mullins Order, p. 12.

B. Plaintiffs' Intentional Infliction of Emotional Distress Claim (Count VI) is Barred.

Intentional Infliction of Emotional Distress ("IIED") was not recognized by the Florida Law as a tort or independent cause of action until 1958. *See* Julia Slocum and Premises v. Slocum v. Food Fair Stores of Florida, 11 So.2d 396, 398 (Fla. 1958). Thus, Plaintiffs' claim for IIED is barred as it only allows recovery for emotional damages, and thus should be dismissed with prejudice. *See* Mullins Order, p. 13.

C. Plaintiffs' Warranty of Habitability Claim (Count VII) is Barred

Warranty of Habitability—recognized under Sec. 83.51, Fla. Stat. was codified by the Florida Legislature in 1974. *See* Javins v. First Nat. Realty Corp., 428 F.2d 1071, 1075-76 (D.C. Cir. 1970); Rozen v. Chrysler Corp., 142 So.2d 735 (Fla. 3d DCA 1962). "Florida… had no minimum building code before 1974." Eid, No. 8:24-CV-1544-TPB-AAS, 2025 WL 917820, at *3; *see also* Sec. 553.73, Fla. Stat. Thus, Count VII is barred and should be dismissed without prejudice to the extent it seeks recovery for emotional damages only. *See* Mullins Order, p. 14.

D. Plaintiff's Negligence Per Se Claim (Count IX) is Barred

Plaintiffs' base their claim for negligence per se on Sec. 468.84, Fla. Stat. *et seq* and Tampa Ordinance, including Sections 19-47 and 19-231. *See* **ECF 1**, ¶¶ 93-102.

First, Sec. 468.84, Fla. Stat. *et seq* did not take effect until July 1, 2010.[1] Thus any claims based thereon are barred.

Second, the land now constituting MacDill was not within the city limits of Tampa at the time of cession. A contemporaneous U.S. Geological Survey map[2] shows that MacDill AFB was outside the municipal boundaries of Tampa at the time of cession. Because Tampa's ordinances did not apply to the territory at the time of cession, any claim of negligence *per se* predicated on any Tampa Ordinance, including Sections 19-47 and 19-231, is barred. As such, Count IX is barred and should be dismissed without prejudice to the extent it seeks recovery for emotional damages only. *See* Mullins Order, p. 14.

---

[1] *See* 2007 Fla. Sess. Law Serv. Ch. 2007-235 (C.S.C.S.C.S.S.B. 2234).

[2] *See* Tampa–Hillsborough County, Fla., U.S. Geological Survey Topographic Map (1947), available at https://pastmaps.com/map/tampa-hillsborough-county-fl-usgs-topo-1947-1#11.67/27.9247/-82.4376 .

E. Plaintiffs' Medical Monitoring Claim (Count X) is Barred

Florida state law precedent as to "medical monitoring" is a judicial creation rather than a statutory creation. *See* Petito v. A.H. Robins Co., 750 So. 2d 103 (Fla. 3d DCA 1999). The Petito decision was rendered in 1999, forty-nine (49) years after the 1950 cession date. Further, the claim is inapplicable when a plaintiff alleges a physical injury (in which case traditional tort remedies govern). Thus, Count X is barred and should be dismissed with prejudice. *See* Mullins Order, p. 16.

F. Plaintiffs' FDUPTA Claims (Counts XII and XIII) are Barred

The Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") was created by the Florida Legislature in 1973—codified in Sec. 501.201-501.213, Fla. Stat. It is plain and unambiguous and therefore the Court need look no further than the statute to determine that FDUPTA does not apply.

FDUTPA expressly excludes a claim for physical injury. Fla. Stat. § 501.212(3): "This part does not apply to . . . [a] claim for personal injury or death . . . .". As such, a FDUTPA claim necessarily is not "brought to recover on account of" a physical injury, and therefore is not an exception under Section 5001(b). As such, Counts XII and XIII are barred and should be dismissed with prejudice. *See* Mullins Order, p. 17.

**b. Plaintiffs' Unjust Enrichment Claim (Count XI) Fails Because Their Relationship with Defendants is Governed by an Express Contract.**

Count XI attempts to state a claim for unjust enrichment. **ECF 1**, ¶¶ 114-117. "Under Florida Law, 'the theory of unjust enrichment is equitable in nature and is, therefore, not available where there is an adequate legal remedy.' " Shelor v. Jaguar Land Rover N. Am. LLC, No. 3:23-CV-908-WGY-PDB, 2025 WL 1580834, at *51 (M.D. Fla. Jan. 31, 2025). Thus, "the existence of an express contract between the parties concerning the same subject matter" precludes an unjust enrichment claim. Glob. Network Mgmt., LTD. v. Centurylink Latin Am. Sols., LLC, 67 F.4th 1312, 1317 (11th Cir. 2023); *see also* Peebles v. GrassMasters Prop. Mgmt., Inc., 384 So.3d 287, 289 (Fla. 3d DCA 2023) (holding the trial court erred in providing relief based on unjust enrichment because an express contract on the same subject matter existed).

Although Plaintiffs failed to identify or attach the specific lease to their Complaint, the Complaint expressly alleges that Plaintiffs had written leases with the Defendants and that the Defendants allegedly breach those leases. The existence of a written lease agreement with each of the Plaintiffs is undisputed; therefore, Plaintiffs cannot assert a claim for unjust enrichment as a matter of law and Count XI must be dismissed.

The conduct alleged by Plaintiffs in Count XI arises from their exclusive use and possession of the Premises pursuant to the lease. **ECF 1**, ¶¶24-39. Plaintiffs have failed to identified "some other conduct amounting to an independent tort", and thus Count XI, as an equitable claim, should be dismissed. Lamm, 749 F.3d at 947 (*quoting* U.S. Fire Ins. Co., 134 So.3d at 480); Weimar, 223 So.2d at 103; Medmoun, 2022 WL 1443919, at *8.

**c. Plaintiffs' Complaint Is An Improper Shotgun Pleading**

Fed. R. Civ. P. 8(a)(2) requires a complaint to include a "short and plain statement of the case showing that the pleader is entitled to relief." Further, Rule 10(b) provides that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." In Weiland v. Palm Beach Cty. Sheriff's Office, the Eleventh Circuit specifically criticized shotgun pleadings where the plaintiff asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." 792 F.3d 1313, 1321-23 (11th Cir. 2015); *see also* Magluta v. Samples, 256 F.3d 1282, 1284 (11th Cir. 2001).

Contrary to the requirements of Rule 8, the Complaint contains 206 paragraphs of duplicative, conclusory, and vague allegations all directed at

three undifferentiated Defendants, a clear example of a *quintessential* "shotgun pleading." Pelletier v. Zweifel, 921 F.2d 1465, 1518 (11th Cir. 1991); *see also* McDonough v. City of Premisesstead, 771 F. App'x 952, No. 18-13263 Non-Argument Calendar, 2019 WL 2004006, at *2 (11th Cir. May 7, 2019) (*citing* Weiland, 792 F.3d, at 1321-23 (11th Cir. 2015)); Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294-95 (11th Cir. 2018)).

The Complaint: (1) commingles claims by failing to state separate and distinct claims for each individual Plaintiff against each individual Defendant; (2) incorporates all preceding paragraphs by reference in every count asserted against "all defendants"; and (3) includes conclusory, vague, and immaterial allegations that do not clearly connect to a particular cause of action. Therefore, the Complaint should be dismissed as an improper shotgun pleading.

## III. CONCLUSION

For all of these reasons, Defendants move to dismiss the Complaint.

## LOCAL RULE 3.01(g) CERTIFICATE

Per to Local Rule 3.01(g), Defendants certify that the undersigned has conferred with counsel for Plaintiffs who oppose this Motion.

Respectfully submitted,
LEWIS BRISBOIS BISGAARD & SMITH LLP
***s/ Jonathan Kepko***
JONATHAN G. KEPKO
Florida Bar Number 67375
Email: jonathan.kepko@lewisbrisbois.com;
flcourtmail@lewisbrisbois.com
stephanie.pineiro@lewisbrisbois.com
G. WILLIAM HUNT
Florida Bar Number 126838
Email: william.hunt@lewisbrisbois.com;
flcourtmail@lewisbrisbois.com;
Brenda.Howard@lewisbrisbois.com
401 East Jackson Street, Suite 3400
Tampa, Florida 33602
Phone: 813.739.1900; Fax: 813.739.1919
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 8, 2026, I electronically filed the foregoing with the Clerk of the Court by using the Clerk's CM/ECF System, which will send a Notice of Electronic Filing to the following:

**Robert J. McKee:** rmckee@themckeelawgroup.com
**Vincent J. Colatriano**: vcolatriano@cooperkik.com
**Michael Weitzner**: mweitzner@cooperkik.com
**Kristina Baehr:** Kristina@well.law

***s/Jonathan Kepko***
Attorney